IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BARBARA PECK, *on behalf of herself and others similarly situated*, | Case No. 1:22-cv-02123 |
| Plaintiff, | |
| -vs- | JUDGE DAVID A. RUIZ |
| MOEN INCORPORATED, | **Memorandum Opinion and Order** |
| Defendant. | |

Pending before the Court is the parties' Joint Motion for Approval of Settlement and Dismissal (R. 34) to which the parties attached a fully executed settlement agreement. (R. 34-1). As explained below, the Court finds that the proposed settlement amounts to a fair resolution of Plaintiffs' claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq*.

### I. Background

Plaintiff Barbara Peck ("Peck"), on behalf of herself and others similarly situated (collectively "Plaintiffs"), filed this collective action against Defendant Moen Incorporated ("Defendant") alleging that it knowingly and willfully violated the FLSA by failing to pay Plaintiffs overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they allegedly worked over 40 hours each workweek. (R. 1, ¶¶ 12-25). Specifically, Plaintiffs' allegations relate to time spent doing the following uncompensated work-related activities causing

them to work in excess of 40 hours: (1) a policy that required Plaintiffs to be ready to take customer calls at the exact start time of their scheduled shift despite the need to boot up computers and log into various systems and applications that would take approximately fifteen minutes; and (2) completing certain administrative tasks, such as completing orders, that were completed off-the-clock due to Defendant's "call time" requirements that did not provide sufficient time to complete required tasks while employees were on the clock. (R. 1, PageID# 3-5).

Defendant denies that it violated the FLSA, insisting that Plaintiffs were paid for all compensable work at the legal rate at all times relevant to the present dispute. (*See generally* Doc. No. 10). The parties have reached a settlement that resolves Plaintiffs' claim, and now seek approval of the Joint Settlement. (R. 34).

## II. Applicable Law

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (internal quotations omitted) (citing 29 U.S.C. § 202(a)). Because employees are guaranteed certain rights by the FLSA, "public policy requires that these rights not be compromised by settlement." *Crawford v. Lexington-Fayette Urban Cty. Gov.*, No. 5:06-cv-299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008); *Chambers v. A.R.E. Accessories LLC*, No. 5:23-CV-890, 2024 WL 3179702, at *2 (N.D. Ohio June 26, 2024) (Lioi, J.).

FLSA's provisions are mandatory except in two narrow circumstances: (1) FLSA may be compromised where claims are supervised by the Secretary of Labor; and (2) when a court reviews

and approves a settlement in a private action under 29 U.S.C. § 216(b). *Chambers*, 2024 WL 3179702, at *2 (*citing Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982)).

As explained in another decision from within this District, the following considerations apply in review of proposed FLSA settlements:

> In reviewing the settlement of a federal plaintiff's FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.' " *Rotuna v. W. Customer Mgmt. Group LLC*, No. 4:09CV1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) (*quoting Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 719 (E.D. La. 2000) (further citation omitted)). The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id*. (*citing Crawford*, 2008 WL 4724499, at *3). The Court should also consider the following factors: the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement. [footnote omitted] *Crawford*, 2008 WL 4724499, at *3 (citing *Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In addition, where the settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See generally Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (*citing Blum v. Stenson*, 465 U.S. 886, 893, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).

*Schneider v. Goodyear Tire & Rubber Co.*, 2014 WL 2579637 at * 2 (N.D. Ohio June 9, 2014); *accord Lansbury v. City of Ashtabula, Ohio*, No. 1:23CV01937, 2024 WL 1742380, at *1–2 (N.D. Ohio Apr. 18, 2024).

### III. Analysis

First and foremost, the Court finds that the present action presents a *bona fide* dispute and the parties possess divergent views of the facts and the applicable law that, in the absence of a settlement, could have necessitated further discovery, dispositive motions, other litigation expenses, and/or trial expenses. The parties' respective attorneys confirm that a *bona fide* dispute exists. (R.

3

34, PageID# 181, ¶6). The pleadings reveal a disagreement over whether Plaintiffs should have been compensated during the 15-minute period prior to the beginning of the shift or for administrative tasks allegedly completed after the shift. (*See generally* R. 1 & 10).

The Court observes that the settlement was the result of arms-length negotiations between parties and there is certainly no hint of fraud or collusion. *See, e.g., Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Absent evidence of fraud or collusion, such settlements are not to be trifled with.")

With respect to the monetary awards to Plaintiffs, the Joint Settlement provides that all 33 opt-in Plaintiffs will receive a pro-rated share of the $25,569.16 settlement amount based on the total number of weeks worked during the period covered by the settlement. (R. 34-1, PageID# 187, ¶2). The Court notes that the parties represent they "engaged in a detailed investigation of the pay and time records for each of the Opt-Ins. In connection with this investigation, Representative Plaintiff, through counsel, engaged an economist to assist with the analysis and preparation of a damages model." (R. 34, PageID# 181). The Court takes into account the opinion of Plaintiffs' counsel that the settlement amount fairly compensates Plaintiffs. (R. 43, PageID# 184, ¶14). The Joint Motion further states that "the Parties themselves deem their agreement fair and reasonable." *Id*. at ¶15. The Court further observes that the amount of alleged overtime alleged in the Complaint may be as little as fifteen minutes per day, resulting in only about 1.25 hours of overtime per week. The payments to the Plaintiffs range from as little as $26.43 for an individual who worked only two weeks to $2,471.08 to an individual who worked 187 weeks. These sums are not insignificant in light of the rather small number of hours at issue per plaintiff.

As for the award of attorney fees, the Court finds that the agreed upon settlement award of $35,000.00 to Plaintiffs' counsel for attorneys' fees and costs is reasonable based on the representation that, at the time of settlement negotiations, Plaintiffs' counsel's time entries reflected a total of $25,558.00 in accrued attorneys' fees and out-of-pocket expenses in the amount of $10,575.35 between the filing of the Complaint, issuance of the notice, and preparation of a damages model. (R. 34, PageID# 181, ¶5).

In addition, the Joint Settlement provides for a service payment to Plaintiff representative Peck in the amount of $2,000. (R. 35, PageID# 181, ¶5). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (citations omitted)). The Court approves the agreed upon service award to the representative Plaintiff in recognition of her service in this action.

Finally, the parties assert " Plaintiff's probability of success on the merits was not a foregone conclusion. The case was actively litigated by both Parties. Defendant planned to see the case through a dispositive motion and/or decertification motion after the close of discovery had the matter not resolved." (R. 34, PageID# 184, ¶13). Given the relatively early stages of litigation and the lack of briefing on the legal issues, the Court is not in a position to assess the likelihood of success on the merits. Nevertheless, success in these cases is rarely, if ever, a foregone conclusion. Further, this area of the law has recently changed given the Sixth Circuit Court of Appeals' recent decision in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1007 (6th Cir. 2023) introducing some uncertainty into the course of litigation. Moreover, the other factors discussed above weigh in favor of approving the settlement.

## IV. Conclusion

For the foregoing reasons, the Court grants the Joint Motion for Approval of Settlement and Dismissal. (R. 34). This action is dismissed with prejudice.

IT IS SO ORDERED.

Date: December 11, 2024

*s/ David A. Ruiz*
DAVID A. RUIZ
UNITED STATES DISTRICT JUDGE